IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CHRISTINA ELAINE MCCONNELL; DISCOVER BANK; WAKEFIELD & ASSOCIATES, INC.; GREAT PLAINS HEALTH; AND UNKNOWN PERSONS CLAIMING ANY INTEREST IN THE PROPERTY,<br><br>    Defendants. | 8:18CV__ |

COMPLAINT

Comes now the Plaintiff by Joseph P. Kelly, United States Attorney for the District of Nebraska and Robert L. Homan, Assistant United States Attorney for this District, and for its cause of action alleges:

(1) This is a civil action brought by the United States of America under the provisions of 28 U.S.C. § 1345.

(2) Service may be made in the following manner:

 (a) The Defendant, Christina Elaine McConnell, (Borrower), may be served by delivering a copy of the Summons and Complaint to her at 803 West 4th Street, McCook, NE 69001 in Red Willow County, Nebraska, within the jurisdiction of this court.

 (b) The Defendant, Discover Bank, may be served by mailing certified mail, return receipt requested, a copy of the Summons and Complaint to its corporate headquarters at 502 East Market Street, Greenwood, DE 19950, pursuant to Nebraska R. Civ. P. §§ 25-509.01;

1

25-540. This Defendant may be considered within the jurisdiction of this court pursuant to Nebraska R. Civ. P. § 25-536(1)(e).

 (c) The Defendant, Wakefield & Associates, Inc., may be served by delivering a copy of the Summons and Complaint to its Registered Agent, InCorp Services, Inc., 5601 South 59th Street, Suite C, Lincoln, NE 68516.

 (d) The Defendant, Great Plains Health, may be served by delivering a copy of the Summons and Complaint to Melvin McNea, the registered agent for North Platte, Nebraska Hospital Corporation, at 601 West Leota Street, North Platte, NE 69101.

 (e) The Defendant, Unknown Persons Claiming Any Interest in the Property, may be served by publication pursuant to the laws of the State of Nebraska.

 (3) On or about May 5, 2000, the Defendant, Christina Elaine McConnell, executed and delivered to the Plaintiff, United States of America, acting through the Rural Housing Service, an agency of the United States Department of Agriculture, a Promissory Note whereby she promised to pay to Plaintiff the sum of $85,275.00, with interest thereon at 7.375 percent per annum. As consideration for the Note, the Plaintiff made a Rural Housing loan to the Defendant, Christina Elaine McConnell, pursuant to the provisions of Title V of the Housing Act of 1949 (42 U.S.C. § 1471 *et seq*.). A true and correct copy of the Note is attached as **Exhibit A**.

 (4) At the same time and place and as part of the same transaction, to secure the payment of the Note, the Defendant, Christina Elaine McConnell, executed and delivered to the Plaintiff a purchase-money security interest in the form of a Real Estate Mortgage upon certain real estate in Red Willow County, Nebraska, within the jurisdiction of this court, to-wit:

  **LOT FIVE (5), BLOCK SIX (6), SEVENTH ADDITION TO THE CITY OF MCCOOK, RED WILLOW COUNTY, NEBRASKA.**

This Mortgage was recorded in the Office of the Register of Deeds of Red Willow County, Nebraska, on May 5, 2000, in Book 177, at Pages 435-440. A true and correct copy of the Mortgage is attached as **Exhibit B**.

(5)  The Plaintiff is the owner and holder of the Promissory Note and Real Estate Mortgage, attached as **Exhibits A and B**.

(6)  Pursuant to the Housing Act of 1949, as amended, 42 U.S.C. § 1490a, and the implementing regulations, 7 C.F.R. § 3550.162, the Real Estate Mortgage also secured the recapture of interest credit or subsidy granted to the Defendant, Christina Elaine McConnell. A true and correct copy of the Subsidy Repayment Agreement is attached as **Exhibit C**. The total amount of interest credit or subsidy subject to recapture is $32,047.55.

(7)  The Defendant, Christina Elaine McConnell, failed to pay to Plaintiff installments of principal and interest when due in violation of the provisions of the Note and Mortgage. The Plaintiff has accelerated the indebtedness and made demand for payment in full. The demand for payment remains unsatisfied.

(8)  The Plaintiff claims it is owed, pursuant to the provisions of the Promissory Note and Real Estate Mortgage, a total balance of $121,632.02, which includes $76,743.56 in total principal (which is comprised of $68,937.76 in principal, $5,853.84 in advances, $91.96 in late charges, and $1,860.00 in escrow); plus $12,840.91 in total interest, as of May 15, 2017, plus interest accruing thereafter at the daily rate of $15.1115 per day to the date of judgment herein, together with interest at the legal rate thereafter; plus $32,047.55 in interest credit or subsidy subject to recapture to be recovered; plus the costs of this action.

(9)  No other action has been brought for the recovery of the balance due.

(10) The Plaintiff has completed all loan servicing requirements of Title V of the Housing Act of 1949, 42 U.S.C. § 1471, *et seq*.

(11) The following Defendants may claim an interest in the property subject to this foreclosure action:

(a) The Defendant, Discover Bank, may claim an interest pursuant to a judgment in its favor in the amount of $14,459.22, filed in the Red Willow County Court, Nebraska, Case No. CI 15 366, October 13, 2015.

(b) The Defendant, Wakefield & Associates, Inc., may claim an interest pursuant to a judgment in its favor in the amount of $807.48, filed in the Red Willow County Court, Nebraska, Case No. CI 16 129, July 26, 2016.

(c) The Defendant, Great Plains Health, may claim an interest pursuant to a judgment in its favor in the amount of $2,934.47, filed in the Red Willow County Court, Nebraska, Case No. CI 16 248, September 13, 2016.

(d) The Defendant, Unknown Persons Claiming Any Interest in the Property, may claim some interest in the subject property.

(12) The interests of all the Defendants are junior and inferior to the interests of the Plaintiff.

(13) None of the Defendants have a right to redemption after foreclosure sale herein.

WHEREFORE, the Plaintiff demands judgment against the mortgaged property and against the Defendant, Christiana Elaine McConnell, in the total amount of $121,632.02, which includes $76,743.56 in total principal (which is comprised of $68,937.76 in unpaid principal, $5,853.84 in advances, $91.96 in late charges, and $1,860.00 in escrow); plus $12,840.91 in total interest, as of May 15, 2017, plus interest accruing thereafter at the daily rate of $15.1115 per day

to the date of judgment herein, together with interest at the legal rate thereafter; plus $32,047.55 in interest credit or subsidy subject to recapture to be recovered; plus the costs of this action.

The Plaintiff further demands that its Mortgage be declared a first and paramount lien on the real estate described therein and that such advances as the Plaintiff may be authorized and required to pay for insurance premiums, real estate taxes, title fees, or other costs necessary to protect the security during the pendency of this proceeding be allowed as a first and prior lien on the security.

The Plaintiff further demands that all legal right, title and interest which said Defendants have in the real estate be sold at public sale, without redemption, in accordance with 28 U.S.C. §§ 2001-2003, inclusive, and that the sale be subject to any unpaid real estate taxes or special assessments, and that the sale proceeds be applied in the following order:

(1)　　Filing fees allowed pursuant to 28 U.S.C. § 2412(a)(2);

(2)　　The costs of the sale and of this action;

(3)　　The interest accruing on the Plaintiff's judgment against the mortgaged property and against the Defendant, Christina Elaine McConnell;

(4)　　The Plaintiff's judgment against the mortgaged property and against the Defendant, Christina Elaine McConnell;

(5)　　The Plaintiff's judgment for interest credit or subsidy subject to recapture; and

(6)　　The balance, if any, be brought into this Court to await its further order.

The Plaintiff further demands that all right, title and interest in and to the real estate of the Defendant, Christina Elaine McConnell, and of all persons claiming by, through or under her be decreed to be junior and inferior to the Plaintiff's Mortgage and be absolutely barred and foreclosed.

If the purchaser of the real estate be denied possession, the Plaintiff prays that upon the filing of a proper Praecipe, this Court issue a Writ of Assistance and without further order of this Court place the purchaser of the real estate in peaceable possession.

                    UNITED STATES OF AMERICA,
                    Plaintiff

                    JOSEPH P. KELLY
                    United States Attorney for the
                    District of Nebraska

By:   /s/ Robert L. Homan
       ROBERT L. HOMAN, #18580
       Assistant United States Attorney
       1620 Dodge Street, Suite 1400
       Omaha, NE  68102-1506
       Tel:  402-661-3700
       Fax:  402-661-3086
       E-mail:  robert.homan@usdoj.gov

Of Counsel:

Office of General Counsel
U.S. Department of Agriculture, Rural Development
Beacon Facility – Mail Stop 1401
P.O. Box 419205
Kansas City, MO  64141-6205
Tel:  (816) 823-4646
Fax:  (816) 823-4688

REQUEST FOR PLACE OF TRIAL

The United States hereby requests that trial of the above-entitled matter be held in the City of Omaha, Nebraska.

                    /s/ Robert L. Homan
                    ROBERT L. HOMAN

# PROMISSORY NOTE

Type of Loan SECTION 502                                      Loan No. ▓▓▓▓47

Date: __May 05__, __2000__

_____▓▓▓▓_____
(Property Address)

__Mc Cook__,  __Red Willow__,  __Nebraska__
(City or Town)    (County)    (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $ __85,275.00__ (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of __7.375__ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

☐ I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____, _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____, and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

☒ II. Payments shall not be deferred. I agree to pay principal and interest in __396__ installments as indicated in the box below.

| |
|---|
| I will pay principal and interest by making a payment every month. I will make my monthly payment on the __5th__ day of each month beginning on __June 05__, __2000__ and continuing for __395__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on __May 05__, __2033__, I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date." My monthly payment will be $__574.89__. I will make my monthly payment at __the post office address noted on my billing statement__ or a different place if required by the Government. |

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

1

EXHIBIT A

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of  15   days after the date it is due, I will pay a late charge. The amount of the charge will be  4.000   percent of n overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government w use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a parti prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Governme agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without n consent. If the Government assigns the note I will make my payments to the assignee of the note and in such ca: the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit fro other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only b used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is ( leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, c (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare th entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediatel pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government wit information the Government requests about my financial situation. If the Government determines that I can get a loa from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and term for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amour to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 50 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of paymer assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewher Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am i default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certai date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time whei I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, th Government will still have the right to do so if I am in default at a later date. If the Government has required me t immediately pay in full as described above, the Government will have the right to be paid back by me for all of it: costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expense include, for example, reasonable attorney's fees.

Account #          47

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166, or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

_____Mishna E McConnell_____ Seal      _____ Seal
            Borrower                                    Borrower

_____ Seal      _____ Seal
            Borrower                                    Borrower

| RECORD OF ADVANCES ||||||
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 85,275.00 | 05-05-00 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ 85,275.00 ||

Account #: ▓▓▓47

3

Recorded Book 177, Page 435
May 5, 2000, 9:20 A.M.

*Pauletta Derver*
Reg. of Deeds, Red Willow Co.

Form RD 3550-14 NE
(11-96)

[Space Above This Line For Recording Data]

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR NEBRASKA

THIS MORTGAGE ("Security Instrument") is made on  May 5 , 2000 . [Date]
The mortgagor is  CHRISTINA E. MCCONNELL, a single person

("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| May 5, 2000 | $85,275.00 | May 5, 2033 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower irrevocably grants and conveys to Lender in trust, with power of sale, the following described property located in the County of   Red Willow , State of Nebraska:

LOT FIVE (5), BLOCK SIX (6), SEVENTH ADDITION TO THE CITY OF MCCOOK,
RED WILLOW COUNTY, NEBRASKA

which has the address of [REDACTED]  McCook
 [Street] ("Property Address"); [City]
Nebraska  69001  [ZIP]  [REDACTED], McCook, NE 69001

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instruction, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Agriculture, Clearance Officer, STOP-7602, 1400 Independence Ave., S.W., Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB number.

Page 1 of 6

EXHIBIT B

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed

in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower

will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

15. **Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

17. **Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or

rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be decreed incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

**24.** Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of possession or, (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to anew Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with

this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument.

_Christine E. McConnell_
CHRISTINA E. MCCONNELL  _Borrower_

_____
_Borrower_

**ACKNOWLEDGMENT**

STATE OF NEBRASKA  } ss.:
COUNTY OF RED WILLOW

On the ___5th___ day of ___May___, before me, a Notary Public in and for said County, personally appeared ___Christina E. McConnell, a single person,___ to me known to be the identical person(s) named in, and who executed the foregoing instrument, and acknowledged to me that ___she___ executed the same as ___her___ voluntary act and deed.

_John F. Hanson_
_Notary Public_

GENERAL NOTARY-State of Nebraska
JOHN F. HANSON
My Comm. Exp. Sept. 17, 2001

(SEAL)

My commission expires the ___17th___ day of ___September___, ___2001___.

Form RD 3550-12
(10-96)

United States Department of Agriculture
Rural Housing Service

Form Approved
OMB No. 0575-0166

# SUBSIDY REPAYMENT AGREEMENT

1. As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with section 502 of the Housing Act of 1949, is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2. When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3. Market value at time of initial subsidy $ __84,900.00__ less amount of Rural Housing Service (RHS) loans $ __85,275.00__ less amount of any prior liens $ _____ equals my/our original equity $ __0.00__ . This amount equals __0__ % of the market value as determined by dividing original equity by the market value.

4. If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, complete the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | Average interest rate paid | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 – 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 – 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 – 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 – 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 – 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 – 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6. Calculating Recapture

    Market value (at the time of transfer or abandonment)
LESS:
    Prior liens,
    RHS balance,
    Reasonable closing costs,
    Principal reduction at note rate,
    Original equity (see paragraph 3), and
    Capital improvements.
EQUALS
    Appreciation value. (If this is a positive value, continue.)
TIMES
    Percentage in paragraph 4 (if applicable),
    Percentage in paragraph 5, and
    Return on borrower's original equity (100% - percentage in paragraph 3).
EQUALS
    Value appreciation subject to recapture. Recapture due equals the lesser of this figure or the amount of subsidy received.

| Borrower | Date |
|---|---|
| Christina E M'Connell (signature) | 5-5-00 |
| Borrower | Date |
| | |

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602. **Please DO NOT RETURN this form to this address.** Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB control number.

☆ U.S. GPO: 1996-578-536

EXHIBIT C